IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| HAROLD VEN-NOY DAVIS, § | | |
| TDCJ-CID # 1068730, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. V-04-0101 |
| § | | |
| DOUG DRETKE, § | | |
| § | | |
| Respondent. § | | |

## **MEMORANDUM OPINION AND ORDER**

Petitioner Harold Ven-Noy Davis, an inmate of the Texas prison system, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a state court conviction. The respondent filed a motion for summary judgment. After considering the motion, Davis's response, the record, and the applicable law, the court **GRANTS** the respondent's motion and **DISMISSES** the habeas petition. The reasons are stated below.

## **I. Procedural History**

A jury found Davis guilty of two counts of aggravated sexual assault of a child and sentenced him to two life sentences, to be served consecutively in prison. *State v. Davis*, No. 2000-12-5495 (24th Dist. Ct., Calhoun County, Tex., Sept. 4, 2001). Davis filed an appeal; the Court of Appeals for the Thirteenth Judicial District of Texas affirmed the trial court's judgment in an unpublished opinion. *Davis v. State*, No. 13-01-744-CR, 2003 WL 1950237 (Tex. App.- Corpus Christi Apr. 24, 2003, pet. ref'd). Davis filed a petition for discretionary review which was refused by the Texas Court of Criminal Appeals on November 5, 2003. *Davis v. State*, No. 1216-03. Davis then filed

a petition for a writ of certiorari which the United States Supreme Court denied on October 4, 2004. *Davis v. Texas*, 125 S.Ct. 208 ( 2004) (No. 03-11069).

Davis filed an application for a state writ of habeas corpus on March 17, 2004. The Court of Criminal Appeals denied the application, without a written order, on August 25, 2004. *Ex parte Davis*, No. 58,980-01. Davis then filed the current pending federal habeas action with this court.

## II. Claims for Relief

Davis makes the following claims:

1. Davis was denied assistance of counsel.

2. Davis was denied the right to appeal *pro se.*

3. The prosecution withheld evidence which was favorable to Davis.

4. The prosecution and the court denied Davis compulsory process.

5. Davis was subjected to cruel and unusual punishment.

Petition, Docket Entry No. 1, at 7-8, 10.

## III. The Applicable Legal Standards

This petition is governed by applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The intent of the AEDPA is to prevent federal habeas "retrials" and to ensure that state-court convictions are given effect to the extent possible under the law, *Bell v. Cone*, 122 S.Ct. 1843, 1849 (2002), by limiting the scope of collateral review and raising the standard for federal habeas relief. *Robertson v. Cain*, 324 F.3d 297, 306 (5th Cir. 2003).

Under the AEDPA, federal relief cannot be granted on claims adjudicated on the merits in state court unless the state adjudication was (1) contrary to clearly established federal law as

determined by the Supreme Court, or (2) involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Williams v. Taylor,* 120 S.Ct. 1495, 1519 (2000), *citing* 28 U.S.C. §§ 2254(d)(1) and (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a set of facts that are materially indistinguishable from a Supreme Court decision and arrives at a result different from the Court's precedent. *Early v. Packer*, 123 S.Ct. 362, 365 (2002). A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 120 S.Ct. at 1520, 1523. In deciding whether a state court's application was unreasonable, this court considers whether the application was objectively unreasonable. *Id.* at 1521

The AEDPA affords deference to a state court's resolution of factual issues. Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state-court proceeding. *Miller-El v. Cockrell*, 123 S.Ct. 1029, 1041 (2003). A federal habeas court must presume the underlying factual determination of the state court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *see also Miller-El*, 123 S.Ct. at 1036.

These standards will be applied to the pending summary judgment motion.

### IV. Analysis

A. Denial of Counsel

Davis alleges that he was forced to represent himself after his court appointed attorney withdrew from the case before trial. He asserts that the trial court knew well in advance that he and his attorney had an irreconcilable conflict and that he did not trust his attorney. The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel. U.S. CONST. amend. VI; *Strickland v. Washington*, 104 S.Ct. 2052, 2064 (1984). However, this right does not entitle an individual to his choice of court appointed attorney. *Wheat v. United States*, 108 S.Ct. 1692, 1697 (1988); *Cantu-Tizn v. Johnson*, 162 F.3d 295, 300 (5th 1998), *citing United States v. Breeland*, 53 F.3d 100, 106 n. 11 (5th Cir.1995); *Green v. Johnson*, 160 F.3d 1029, 1045 (5th Cir. 1998); *Malcom v. State*, 628 S.W.2d 790, 791 (Tex. Crim. App. 1982). Also, the Sixth Amendment does not provide a guarantee to a "meaningful attorney-client relationship." *Morris v. Slappy*, 103 S.Ct. 1610, 1617 (1983) A defendant's mere dissatisfaction with his attorney's strategy does not support a finding of a constitutional violation. *See Moreno v. Estelle*, 717 F.2d 171, 175 (5th Cir. 1983).

Attorney William White was appointed to represent Davis at trial. On February 22, 2001, Davis filed a motion to dismiss White and to allow him to represent himself at trial. Trial Transcript (Tr) at 18, (Docket Entry No. 23-7, at 23). In support of his motion, Davis asserted that White did not comply with his requests for information or a trial setting. *Id*. Davis also claimed that White did not investigate reports or interview witnesses pursuant to his requests and that White had not maintained contact with him. *Id*. He further complained that White had requested that the court order a physiological [sic] evaluation of Davis which was not in his best interest. *Id.*

On February 26, 2001, White submitted a letter responding to Davis's motion. Tr at 20-22. In his letter, White refuted Davis's allegation that White refused to go to trial and stated that he had made it clear to Davis that it was his choice as to whether they would proceed to trial by jury or accept a plea offer. *Id*. at 20. White also stated that it was unwise to seek a speedy trial at that point because discovery had not been completed. *Id*.

White stated that he had advised Davis that interviewing adverse witnesses was an unwise strategy because it often alerts the prosecution to defensive issues that could be raised at trial. *Id*. at 21. White also explained that he had a duty to request a competency examination for Davis because he suspected one was necessary. *Id.* He reported that his conferences with Davis were primarily devoted to Davis's religious diatribes which were replete with biblical passages and spiritual dogmas. *Id*. Davis's conversation only became relevant when another client arrived for an interview with White. *Id*. White admitted to missing a non-jury docket call on February 13, 2001. *Id*. However, this was due to his wife's hospitalization, and White had previously arranged for a colleague to attend the arraignment. *Id*. White concluded with a statement that while he had no objection to being withdrawn from the case, he would continue to represent Davis to the best of his ability. *Id.* at 22.

The trial court conducted a hearing on March 6, 2001, during which Davis's complaints and White's responses were revisited. *See* March 6, 2001, Statement of Facts (SOF). At the conclusion of the hearing, the court ordered Davis and White to confer with each other.

A subsequent hearing was held on April 26, 2001. White announced that he had filed discovery motions; however, he stated that he would accomplish more by taking advantage of the district attorney's open file policy than by filing discovery motions. SOF at 3. Davis insisted on

removing White claiming that White was impeding his rights. *Id*. at 4. When the court told Davis that he could hire a lawyer to replace White, Davis protested that he could not afford a lawyer but that he would not accept White as his counsel. *Id.* White informed the court that he had mailed Davis a motion for bond reduction and requested his signature; however, Davis never returned the motion even though White had included a self-addressed, stamped envelope. *Id*. Davis responded that he had filed his own motion because White's representation was inadequate. *Id*. He also contended that he had a right to have his case resolved within 180 days, an apparent reference to the Texas Speedy Trial Act which had previously been declared void because it violated the Separation of Powers Clause of the Texas Constitution. *See Ex parte Young*, 181 S.W.3d 526 (Tex. App.– El Paso 2005, pet. filed)*, citing* TEX. CODE CRIM. PRO. art. 32A.02; *Meshell v. State*, 739 S.W.2d 246, 252 (Tex. Crim. App. 1987).

Before the trial commenced on July 16, 2001, Davis announced that he did not "have a lawyer" although White was still listed as counsel. 2 SOF, at 3. Noting that White wanted to speak with Davis, the court ordered Davis to talk to White. *Id*. at 4. Davis persisted in his request to remove White as his attorney and stated that he would represent himself if necessary. *Id*. at 11. The trial court then inquired about Davis's education. *Id*. Davis answered that he had completed the Ninth Grade and had a GED certificate. *Id.* Davis also informed the court that he was forty-five years old and that he worked as a pipe fabricator with some welding and supervisory experience. *Id*. at 12.

The court then asked Davis why he believed that he would do a better job of representing himself than having White as his attorney. *Id*. When Davis deflected the question by again requesting another attorney, the court explained that Davis had two choices, continue with White

as his counsel or try the case *pro se*. *Id.* The trial court admonished Davis that lawyers have special training and that he was making a terrible mistake not accepting White's assistance of counsel comparing Davis' self-representation to that of a person with no welding experience trying to do Davis's profession. *Id*. at 13. While upholding White's credentials as a lawyer, the court gave a second analogy in which a sick person would prefer a bad doctor to no doctor at all. *Id*. at 14. Despite the court's admonitions, Davis chose to represent himself. *Id*. The court then ordered White to remain available as standby counsel in the event that Davis desired his advice. *Id.* at 16.

White handed over all the discovery in his possession, after removing some of his work product. *Id*. at 17. The court admonished Davis about following the rules and the finality of his rulings. *Id.* at 19. The court also reminded Davis that it was not the court's duty to help him during the trial. *Id*. at 21. The jury panel was then seated, and the trial proceeded. *Id*. at 23.

During jury deliberations, the trial court gave Davis an opportunity to testify concerning any complaint he had about White. 4 SOF 53. Davis complained that White withheld discovery from him; however, he also complained that White sent records to him while he was in jail which endangered his safety. *Id.* at 55. He also repeated his complaints that White failed to investigate the case or confer with Davis. *Id*. at 55-57. However, Davis admitted that he refused to see White when he came to see him and that he rebuffed White's attempts to communicate with him. *Id*. at 60-63.

The court appointed another attorney to represent Davis for the purposes of a hearing on the effectiveness of White's representation. *Id.* at 75-77. At the hearing, White testified that he had first met with Davis in June of 1999, and that they met about once a month for about one and one-half

years. 5 SOF 7. The two maintained a good working relationship until Davis was arrested on two new indictments. *Id.* at 9. At that point, the relationship started to deteriorate. *Id.*

Davis seemed to understand the nature of the charges against him, but White was concerned about Davis's mental competency because he often digressed into religious matters which dominated the conversation. *Id*. at 9-10. The doctor found that Davis had "some unique religious beliefs" but he did have a sufficient understanding of the case. *Id.* at 10. Although Davis was apparently competent, White had difficulty working with him, and Davis became less communicative. *Id.* at 11-13. In spite of these difficulties, White managed to gather enough information to prepare for trial. *Id*. at 14-15. White secured the police report, the victim's video statement, and the witness statements. *Id.* at 30-31. White maintained a case log detailing the work performed in Davis's behalf. *Id*. at 33-34; State's Exhibit 14. At the conclusion of the hearing, the trial court determined that White had provided competent counsel and that if there was any problem, it was due to Davis's refusal to accept White's assistance. *Id.* at 44.

In light of the records and the state court findings, there is no indication that White's performance as defense counsel was constitutionally inadequate. *See Strickland*, 104 S.Ct. at 2064; *Harris v. Day*, 226 F.3d 361, 364 (5th Cir. 2000). The court had appointed Davis effective counsel and was not obligated to search for another one that Davis found to be agreeable. *Malcom*, 628 S.W.2d at 791. *See also United States v. Creel*, 158 Fed. Appx. 627, 628 (5th Cir. Dec 15, 2005) (disagreements with counsel do not constitute cause for new attorney), *citing Morris*, 103 S.Ct. at 1617; *United States v. Young*, 482 F.2d 993, 995 (5th Cir.1973). Davis freely and consciously chose to proceed without counsel although he had been warned of the consequences, and competent counsel was readily available. *See United States v. Kizzee,* 150 F.3d 497, 502 (5th Cir. 1998). *See*

8

*also Faretta v. California*, 95 S.Ct. 2525, 2541 (1975). The record demonstrates that Davis's course of conduct was the source of his difficulties, and he is not entitled to habeas relief. *Cantu-Tzin*, 162 F.3d at 300. Davis has failed to demonstrate that state courts' determination of the denial assistance of counsel claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Nor was the decision an unreasonable determination of the facts. Therefore, Davis's claim that he was denied counsel will be **DENIED**.

  B. Denial of Right to Appeal *Pro Se*

  In an apparent contradiction to his claim concerning his trial, Davis complains that he was denied the right to represent himself on appeal and was forced to rely on the brief filed by his appointed counsel. Davis alleges that he filed a motion to dismiss his appellate attorney, Julie Hale in both the 24th District Court and in the Thirteenth Court of Appeals. He further alleges that he was misled to believe that he was entitled to hybrid representation. (Docket Entry No. 3, at 3). Davis contends that he had the right to submit his own documents and to amend the brief that was filed on his behalf. (Docket Entry No. 1, at 7).

  It is well settled law that a criminal defendant does not have the right to present a supplemental brief when he is already represented by an attorney on appeal. *Myers v. Johnson*, 76 F.3d 1330, 1335 (5th Cir.1996); *Smith v. Collins*, 977 F.2d 951, 962 (5th Cir. 1992). Unlike a criminal trial, there is no federal constitutional right to represent oneself on appeal. *Martinez v. California*, 120 S.Ct. 684, 692 (2000). It has been recognized under Texas law that an appellant may represent himself and file *pro se* briefs on appeal. *Myers v. Collins*, 8 F.3d 249, 252 n.7 (5th Cir. 1993). However, the federal courts do not review state court decisions concerning state laws and such claims do not establish a basis for habeas relief. *Estelle v. McGuire*, 112 S.Ct. 475, 480 (1991);

9

*Martinez*, 120 S.Ct. at 692. Davis has failed to demonstrate that state courts' determination of his claim regarding his right to represent himself on appeal was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Nor was the decision an unreasonable determination of the facts. Therefore, Davis's claim regarding his appeal will be **DENIED**.

### C. Prosecution's Failure to Disclose Favorable Evidence

Davis claims that the prosecution failed to disclose evidence that was favorable to him. He claims that he was denied evidence "the alleged victim told her counsellor [sic] she lied about saying she attempted to tell her mother [and] her mother was a possible witness." Docket Entry No. 1, at 7. Such claims are reviewed under the standards set out in *Brady v. Maryland*, 83 S.Ct. 1194, 1196-97 (1963). In order to assert a claim under Brady, Davis must show that, " (1) the prosecution suppressed evidence, (2) the evidence was favorable, (3) the evidence was material to either guilt or punishment, and (4) discovery of the allegedly favorable evidence was not the result of a lack of due diligence." *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). Evidence is 'material' under *Brady* if there is a reasonable probability that the result at the trial would have been different had the evidence been disclosed to the defendant beforehand. *Summers v. Dretke*, 431 F.3d 861, 878 (5th Cir. 2005). The purported *Brady* evidence must concern new and significant information which was unknown to the defense. *Westley v. Johnson*, 83 F.3d 714, 725 (5th Cir. 1996). A habeas petitioner cannot establish a violation under *Brady* if he could have obtained the information using due diligence. *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir. 1994).

Davis asserts his state habeas application, "A long time after [White's] appointment, Mr. White finally gets some discovery, and I asked if he knew that Katherine told her councillor [sic]

she lied about attempting to tell her mother and her mother being a witness." *Ex parte Davis*, No. 58,890-01, Memorandum at 3 (Docket Entry No. 21-2, at 33). There has been no suppression by the prosecution under *Brady* where Davis's own assertions demonstrate that he had prior knowledge of the information at issue. *Maharaj v. Secretary for Dept. of Corrections*, 432 F.3d 1292, 1315 (11th Cir. 2005). Davis has failed to demonstrate that state courts' determination of his *Brady* claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Nor was the decision an unreasonable determination of the facts. Therefore, Davis's *Brady* claim will be **DENIED**.

D. Compulsory Process

Davis contends that he was denied compulsory process. "In all criminal prosecutions, the accused shall enjoy the right ... to have compulsory process for obtaining witnesses in his favor." *United States v. Soape*, 169 F.3d 257, 268 (5th Cir. 1999), *quoting* U.S. CONST. amend. VI. Consequently, a defendant has the right to the State's assistance in compelling favorable witnesses to attend appear and testify at trial. *Id.*, *citing Pennsylvania v. Ritchie,* 107 S.Ct. 989, 1000 (1987). However, this right is not absolute. The defendant has the duty to make a request for a subpoena, and he must make some plausible showing that the sought after testimony would be both material and favorable to his defense. *Id.*, *citing United States v. Valenzuela-Bernal*, 102 S.Ct. 3440, 3446 (1982).

Davis refers to Volume 3 of the Statement of Facts, Pages 114-117, 127-131, and 143-145. *See* Docket Entry No. 22-16, at 36-40, Docket Entry No. 22-17, Docket Entry No. 22-18, at 1-24. After the State rested, the court asked Davis if he had any witnesses. 3 SOF 114. Davis answered that he needed to subpoena one and recall one later, depending on the length of the trial. *Id.* The

court then told Davis that he needed to tell the court which witnesses he wanted. *Id*. Davis called for Phyllis Davis, his wife, who had been subpoenaed by White. *Id*. at 117. After questioning the witness, Davis stated that he was not prepared and was unable to contact another witness. The record demonstrates that the court did not refuse an adequately supported request for subpoenas by Davis. *See Soape*, 169 F.3d at 268. Consequently, the State courts' rejection of the claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court. Nor was the decision an unreasonable determination of the facts. Therefore, Davis's compulsory process claim will be **DENIED**.

   E. Cruel and Unusual Punishment

   Davis contends that the consecutive life sentences were excessive and in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. Davis asserts that he has no prior felony convictions. The Supreme Court has set forth the following criteria in determining whether a punishment is disproportionate in violation of the Eighth Amendment: "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions." *Solem v. Helm*, 103 S.Ct. 3001, 3011 (1983).

   Davis was convicted of aggravated sexual assault of a child. It is beyond doubt that the life sentences were authorized under the Texas Penal Code. *See* TEX. PENAL CODE § 22.021 (Aggravated Sexual Assault, First Degree Felony). The Fifth Circuit has held that a sentence of life imprisonment for aggravated assault, upon finding of two prior felonies, was not so disproportionate as to constitute cruel and unusual punishment. *Moreno v. Estelle*, 717 F.2d 171, 180-81 (5th Cir. 1983). Moreover, the Fifth Circuit has upheld a state sentence of 50 years for

misdemeanor theft, made a felony by virtue of being a third theft conviction and enhanced by habitual offender statute, after finding that it was not grossly disproportionate to the crime. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-48 (5th 1996).  The Supreme Court has held that the imposition of a mandatory life sentence without possibility of parole for possession of cocaine, without consideration of mitigating factors such as no prior felony convictions, did not constitute cruel and unusual punishment.  *Harmelin v. Michigan*, 111 S.Ct. 2680, 2702 (1991).

Davis has not shown that the State courts' rejection of the claim was not contrary to or an unreasonable application of constitutional law as clearly established by the Supreme Court.  Nor was the decision an unreasonable determination of the facts.  Therefore, Davis's cruel and unusual punishment claim will be **DENIED**.

Therefore, Davis is not entitled to federal habeas relief, and his petition for a writ of habeas corpus is **DISMISSED**.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253, Davis needs to obtain a Certificate of Appealability before he can appeal this Memorandum Opinion and Order dismissing his petition.  To obtain a Certificate of Appealability, Davis must make a substantial showing of the denial of a constitutional right. *Williams v. Puckett*, 283 F.3d 272, 276  (5th Cir. 2002).  To make such a showing, Davis must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues in a different manner; or that the questions are adequate to deserve encouragement to proceed further.  *Lucas v. Johnson*, 132 F.3d 1069, 1073 (5th Cir. 1998).  For the reasons stated in this Memorandum Opinion and Order, Davis has not made a substantial showing of the denial of a

constitutional right. *Newby v. Johnson*, 81 F.3d 567, 569 (5th Cir. 1996). The Court **DENIES** the issuance of a Certificate of Appealability in this action.

### VI. Conclusion

The court **ORDERS** the following:

1.. The petitioner's Motion for Possible Future Summary Judgment (Docket Entry No. 19) is **DENIED**.

2. The respondent's Motion for Summary Judgment (Docket Entry No. 20) is **GRANTED**.

3. The petitioner's Motion for Constitutional Trial (Docket Entry No. 24) is **DENIED**.

4. This action is **DISMISSED** with prejudice.

5. A Certificate of Appealability is **DENIED**.

**SIGNED** on this 28th day of March, 2006.

_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE